# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

JENNIFER L. TREADAWAY                                    PLAINTIFF

V.                    NO. 4:18CV00297 SWW-JTR

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions not reserved
to the Commissioner of Social Security                   DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Webber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I.  Introduction:**

Plaintiff, Jennifer L. Treadaway ("Treadaway"), applied for disability benefits on September 29, 2015, alleging disability beginning on September 30, 2013. (Tr. at 20). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 32). The Appeals Council denied her request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the

Commissioner.

For the reasons stated below, the Commissioner's decision should be affirmed.

## II. **The Commissioner's Decision:**

The ALJ found that Treadaway had not engaged in substantial gainful activity since the alleged onset date of September 30, 2013. (Tr. at 23). At Step Two, the ALJ found that Treadaway has the following severe impairments: trichotillomania, depressive disorder, and anxiety disorder. (Tr. at 24).

After finding that Treadaway's impairment did not meet or equal a listed impairment (Tr. at 24), the ALJ determined that Treadaway had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, except that: (1) she is limited to work where interpersonal contact is incidental to the work performed and where the complexity of tasks is learned and performed by rote, with few variables and little judgment; and (2) she is limited to work where the supervision required is simple, direct, and concrete. (Tr. at 25).

The ALJ found that, based on his RFC, Treadaway was unable to perform any past relevant work. (Tr. at 30). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Treadaway's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including work as a hand packager, an industrial cleaner, and

a general production helper. (Tr. at 31). Thus, the ALJ found that Treadaway was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*,

784 F.3d at 477.

> B. Treadaway's Arguments on Appeal

Treadaway contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ did not properly complete the Psychiatric Review Technique ("PRT"),[1] that Borderline Personality Disorder should have been ruled a severe impairment, and that the credibility analysis was insufficient. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Treadaway suffered from mental impairments throughout the relevant time-period. She received counseling and medication management. She required hospitalization for six days at a psychiatric facility in July 2017. (Tr. at 685-687). She left the hospital with an improved mood. (Tr. at 686). The ALJ found trichotillomania, depressive disorder, and anxiety disorder to be severe impairments.

However, it is clear from the medical record that Treadaway was repeatedly non-compliant with her treatment. In October 2012, she dropped out of treatment. (Tr. at 411). In June 2013, she missed her psychiatric evaluation. (Tr. at 495). That month she stopped taking Celexa, which she reported was helpful in managing

---

[1] The PRT rates a claimant's degree of functional mental limitation in four broad areas: understanding, remembering, and applying information; interaction with others; concentrating, and persisting and maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a.

symptoms. (Tr. at 426, 499). In July 2013, Treadaway did not pick up her prescribed medication. (Tr. at 504). She said she did not want to take it. (Tr. at 508). In October 2013, she dropped out of treatment again. (Tr. at 512).

After a long gap in treatment, she obtained mental health services again in September 2015. (Tr. at 525). But in October 2015, Treadaway said she never tried Sertraline as prescribed because she didn't feel like she was depressed. (Tr. at 530). The treating nurse noted that she missed an appointment around that time. (Tr. at 555). In November 2015, she did not respond to phone calls from the state-agency reviewing doctor. (Tr. at 92). The doctor was unable to schedule a consultative examination as a result, and determined that there was insufficient evidence upon which to base an opinion. *Id*.

In spite of saying that medication helped her, Treadaway admitted she had not been taking it in December 2015. (Tr. at 566). She didn't fill a prescription for Prozac in January 2016. (Tr. at 548). She failed to keep appointments in March 2016. (Tr. at 592). She declined medication in April 2016, and didn't take Lexapro as prescribed in January 2017. (Tr. at 594, 665).

Refusal to follow a prescribed course of treatment undercuts a claimant's allegations of disability. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997). While Treadaway argues that non-compliance is a symptom of mental illness and

5

therefore excusable in an evaluation of disability, the case she cites is distinguishable. *See Pate-Fires v. Astrue*, 564 F. 3d 935 (8th Cir. 2009). In that case, the claimant had severe psychotic episodes that required multiple hospitalizations (admitted involuntarily on one occasion). *Id*. She had paranoid delusions homicidal ideations and had been arrested for attacking and threatening her spouse. *Id.* at 937. Upon examination, the claimant's judgment and insight were poor on numerous occasions. *Id*. Pate-Fires exhibited more severe symptoms than Treadaway, including breaks with reality that accounted for noncompliance. An ALJ must consider the record as a whole when evaluating noncompliance, and here, he discussed the fact that Treadaway felt medication was effective on multiple occasions. The record also shows that Treadaway regularly had fair to good judgment and insight at her visits. The ALJ properly weighed Treadaway's noncompliance.

Treadaway also argues that the ALJ did not conduct a PRT analysis. When the ALJ has discussed the PRT analysis in his decision, he has fulfilled his duty. *Cuthrell v. Astrue*, 702 F.3d 1114, 1117-8 (8th Cir. 2013). In this case, the ALJ explained the PRT criteria, and then discussed Treadaway's functional abilities in the four required areas. (Tr. at 24). He found mild to moderate limitations. *Id.* He cited to Treadaway's ability to do daily activities like fixing meals, washing laundry,

using a computer, and shopping. *Id*. He found that she could socialize and live with her boyfriend. (Tr. at 25). She could take care of personal hygiene and manage her finances. *Id*. Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). The ALJ considered and evaluated the four functional areas in his PRT discussion, as required. Moreover, he bulwarked his conclusions with evidence from the medical record.

The ALJ also properly analyzed the consistency of Treadaway's subjective complaints. Social Security Ruling 16-3p, 2016 SSR LEXIS 4 ("SSR 16-3p"), removed the word "credibility" from the analysis of a claimant's subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. SSR 16-3p became effective on March 28, 2016, and the underlying analysis incorporates the familiar factors that were in place prior to the new ruling. *Martsolf v. Colvin*, No. 6: 16-cv-00348-NKL, 2017 U.S. Dist. LEXIS 2748 (W.D. Mo. Jan. 9, 2017). The ALJ must still give consideration to all of the evidence presented relating to subjective complaints, including: 1) prior work record; 2) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *See Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).

In this case, the ALJ discussed positive response to treatment, ability to perform daily activities, and noncompliance with treatment. He also discussed Treadaway's ability to work on occasion during the relevant time-period (although she did not keep jobs for long). (Tr. at 28). He considered that Treadaway wanted to work and was actively seeking employment. (Tr. at 28-29). His analysis was thorough, and he properly found that Treadaway's complaints were not entirely consistent with the evidence of record.

Treadaway argued that Borderline Personality Disorder should have been considered a severe impairment. However, an ALJ's failure to address a specific impairment does not constitute reversible error if the record supports the conclusion. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006). It is true that Treadaway was diagnosed with Borderline Personality Disorder on more than one occasion. However, a diagnosis alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). A severe impairment means that there is significant functional loss. The evidence shows no significant functional loss.

When Steve Shry, Ph.D. performed a consultative mental examination on Treadaway in 2017, he found she could communicate in an intelligent and effective manner, did not have much difficulty in comprehending and carrying out simple and

complex tasks, was not significantly impaired in her ability to cope with the typical demands of basic work tasks, and was not impaired in her ability to attend and sustain concentration on tasks. (Tr. at 679). Treadway herself said she followed written instructions very well. (Tr. at 314).

The ALJ also considered the opinion of Sam Boyd, Ph.D., an opinion issued concurrent with the consultative exam that he performed in 2013. (Tr. at 413-417). He noted that Treadaway's thoughts were logical, relevant, goal-directed, and well organized. *Id*. She was oriented to person, time, place, and present reality. *Id*. She did not report delusions or paranoia. *Id*. He said she did not show significant deficits in adaptive functioning. *Id.*

The ALJ's decision demonstrated that he considered the record as a whole in his findings at Step Two. The record does not show that the outcome would be different had the ALJ found Borderline Personality Disorder to be a severe impairment. Any error was harmless.

Finally, Treadaway tangentially argues that the RFC outstripped her abilities. The RFC was for simple work. As discussed above, the evidence does not point to a need for further functional limitations.

Treadaway had some mental health problems, but her noncompliance with treatment (treatment she admitted was effective), her generally normal mental status

exams, and her ability to do a variety of daily activities undercut her claims of disability. The ALJ properly evaluated the entire record in finding Treadaway was not disabled.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision that Treadaway was not disabled. The ALJ conducted a proper PRT analysis, he did not err at Step Two, he properly evaluated Treadaway's subjective complaints, and the RFC incorporated Treadaway's limitations.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that the case be DISMISSED, with prejudice.

DATED this 1st day of April, 2019.

_____
UNITED STATES MAGISTRATE JUDGE